IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ED LOYDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 12-2878-JDT-cgc |
| ) | |
| SHELBY COUNTY, ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER GRANTING DEFENDANT SHELBY COUNTY'S MOTION
FOR SUMMARY JUDGMENT
ORDER GRANTING DEFENDANT PALMER'S MOTION TO DISMISS
ORDER CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

The *pro se* prisoner Plaintiff, Ed Loyde, who is incarcerated at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a complaint pursuant to 42 U.S.C. § 1983 on October 5, 2012. (Docket Entry 1.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b). (D.E. 4.) On January 25, 2013, the Court issued an order dismissing portions of the complaint and directing that Defendants Kim Palmer and Shelby County be served with process. (D.E. 6.) Shelby County responded to the complaint by filing a motion to dismiss or, in the alternative, for summary judgment on March 28, 2013. (D.E. 15.) Defendant Palmer filed a motion to dismiss on April 15,

2013.  (D.E. 17.)  Plaintiff did not respond to either motion within the time allotted by the Local Rules and did not seek an extension of time in which to do so.  Therefore, the motions are ripe for disposition.

In evaluating a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  While the complaint "does not need detailed factual allegations" the plaintiff must supply "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; *see also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.

In his complaint, Plaintiff identifies Defendant Palmer as a registered nurse, the Health Services Administrator ("HSA") at the Jail, and a member of the grievance board. (D.E. 1 at 2.)  His factual allegations are as follows:

> [F]or five days I went with out my heart, blood pressure, [d]iabetic and mental medication[.]  I filed several grievances in which nothing was done which is why I feel that Nurse [B]ishop is partly responsiable [sic] because she administers the medicine and I feel Kim Palmer is responsiable [sic] because

2

>she did nothing about the situation and also the Shelby County Justice Center for hireing [sic] and not looking into their employees [sic] activities.

(D.E. 1 at 2.) Defendant Palmer contends that the minimal allegations against her fail to state a claim pursuant to 42 U.S.C. § 1983.

Plaintiff appears to have sued Defendant Palmer primarily because of her supervisory position. However, under U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. at 676; see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." Iqbal, 556 U.S. at 676.

>There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Bellamy, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). Plaintiff does not allege that Defendant Palmer's own actions violated Plaintiff's rights.

Plaintiff also has no claim against Palmer for mishandling his grievances or for failing to take corrective action in response to his grievances. Inmates do not have a right under the Due Process Clause to an effective grievance mechanism. Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003); Shehee v. Luttrell, 199 F.3d at 300; Smith v. Corr. Corp. of Am., 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); Irvin v. Fluery, No. 2:07-cv-117, 2007 WL 5328577, at *2 (W.D. Mich. Sept. 11, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure.")(report and recommendation), *adopted*, 2007 WL 3036493 (W.D. Mich. Oct. 16, 2007); Holloway v. Drew, No. 2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007) (report and recommendation); Robertson v. Montgomery Cnty., No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the grievance procedure."); Robinson v. Hastings, No. Civ. A. 05CV387-K.C., 2006 WL 950185, at *4 (E.D. Ky., Apr. 10, 2006).[1] As the Seventh Circuit Court of Appeals has explained, "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007).

---

[1] See also 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.").

The Court finds that Plaintiff's allegations against Defendant Palmer fail to state a claim under 42 U.S.C. § 1983. Therefore, Palmer's motion to dismiss is GRANTED.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[The burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

---

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

>   (3)   grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
>   (4)   issue any other appropriate order.

Fed. R. Civ. P. 56(e).

>   In <u>Celotex Corp.</u>, the Supreme Court explained that Rule 56:
>
>   mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

>   The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably

>   asks whether reasonable jurors could find by a preponderance of the evidence
>   that the plaintiff is entitled to a verdict[.]"

Id. at 252; *see also* Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).  However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter.  Liberty Lobby, 477 U.S. at 249.  Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

The fact that Plaintiff did not respond does not require granting Defendant's motion. Nevertheless, if the allegations of the complaint are contravened by Defendant's evidence and Defendant is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate.  Smith v. Hudson, 600 F.2d 60, 65 (6th Cir. 1979).

In support of its motion for summary judgment, Shelby County has submitted the Affidavit of Janice Holmes, Shelby County Deputy Administrator of Human Resources (Holmes Aff., D.E. 15-1), and the Affidavit of Robert L. Moore, the Chief Jailer at the Jail. (Moore Aff., D.E. 15-2.)  The County first asserts that summary judgment is appropriate in this case because Plaintiff failed to exhaust his administrative remedies prior to filing this action.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

7

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Porter v. Nussle, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). However, a prisoner is not required to demonstrate exhaustion in his complaint. Jones, 549 U.S. at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. Risher v. Lappin, 639 F.3d 236, 240 (6th Cir. 2011); Napier v. Laurel Cnty., Ky., 636 F.3d 218, 225 (6th Cir. 2011).

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply with the institution's "critical procedural rules," such as time limits for filing grievances. Woodford v. Ngo, 548 U.S. 81 (2006).

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

Id. at 95. *See also* Jones, 549 U.S. at 218.

"An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process." Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010). Thus, an

8

inmate who does not timely pursue all available levels of the grievance procedure has not properly exhausted a particular claim.

In his affidavit, Moore states that he is responsible for the day-to-day operations of the Jail and is one of the custodians of the Jail's records. (Moore Aff. ¶ 2, D.E. 15-2 at 1.) The records show that Plaintiff was booked into the Jail on February 8, 2012. (Id. ¶ 9a at 3.) On February 23, 2012, Plaintiff drafted a grievance, which he submitted to the grievance department on February 28, 2012, asserting that he was not given his medications for five days after his arrest. (Id. ¶ 9b.) The grievance was referred to the Director of Nursing, and Plaintiff acknowledged, in writing, that he received a response to that grievance on March 16, 2012. The grievance response stated that Plaintiff was receiving his medications at that time. (Id. ¶¶ 9c-9e.) Plaintiff did not appeal the initial grievance response to the next level. Therefore, he failed to exhaust his available administrative remedies, and Shelby County is entitled to summary judgment on that basis alone.

Shelby County also contends it is entitled to summary judgment on the ground that Plaintiff can demonstrate no proper basis for § 1983 liability. A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original); *see also* Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged

9

constitutional deprivation. Monell, 436 U.S. at 691-92; Deaton v. Montgomery Co., Ohio, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." Alkire, 330 F.3d at 815 (quoting Monell, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Searcy, 38 F.3d at 286 (quoting Polk Co. v. Dodson, 454 U.S. at 326 (citation omitted)). "[The touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986)).

The only basis for Plaintiff's suit against Shelby County is his allegation that the Jail is liable for "hireing [sic] and not looking into their employees [sic] activities." (D.E. 1 at 2.) In Holmes's Affidavit, she states that she is a custodian of the County's personnel records. Holmes further indicates those personnel records show that neither Defendant Palmer nor Nurse Bishop was an employee of Shelby County during the incident in question. (Id. ¶¶ 4-5 at 1-2.) In Chief Jailer Moore's Affidavit, he indicates that the County contracts

with Correct Care Solutions ("CCS") to provide medical care to the inmates at the Jail. (Moore Aff. ¶ 4, D.E. 15-2 at 2.) Therefore, it can be surmised that Bishop and Palmer were employed by CCS instead of Shelby County.

As Plaintiff has not responded to the motion for summary judgment, he has failed to offer any evidence that Shelby County's hiring policies were the "moving force" behind the alleged unconstitutional actions of Bishop and Palmer, who were not even employed by Shelby County.

Shelby County also contends that Plaintiff has failed to show that he suffered any harm from the delay in receiving his medications. Plaintiff's claim arises under the Eighth Amendment, which prohibits cruel and unusual punishment. *See generally* Wilson v. Seiter, 501 U.S. 294 (1991).[3] An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under Estelle v. Gamble, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence

---

[3] The right of a convicted inmate to be free from excessive force stems from the Eighth Amendment, which prohibits cruel and unusual punishment. *See generally* Wilson, 501 U.S. 294. For a pretrial detainee, that right stems from the Fourteenth Amendment. Thompson v. County of Medina, 29 F.3d 238 (6th Cir. 1994), *citing* Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, the scope of a detainee's Fourteenth Amendment rights are equivalent to those of a convicted inmate under the Eighth Amendment. Thompson, 29 F.3d at 242., in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). Thus, even though Plaintiff may be a pretrial detainee during the events set forth in the complaint, the Eighth Amendment analysis is the same.

deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

The objective component of an Eighth Amendment claim based on a failure to provide adequate medical care requires that a prisoner have a serious medical need. Blackmore, 390 F.3d at 896; Brooks v. Celeste, 39 F.3d 125, 128 (6th Cir. 1994). This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" Blackmore, 390 F.3d at 897 (emphasis in original); *see also* Johnson, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" Blackmore, 390 F.3d at 897 (emphasis omitted).[4] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to

---

[4] The Sixth Circuit elaborated:
These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication. . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."
Id. at 898 (citations omitted).

12

establish the detrimental effect of the delay in medical treatment to succeed.'" Id.; *see also* Johnson, 398 F.3d at 874.

In this case, Plaintiff alleges only that he *could* have suffered serious health problems as a result of not receiving his medication. He alleges: "I could have lost my life due to me not having any meds I could have went in to a coma lost a limb had a heart attack due to my blood pressure going up and over working my pacemaker . . . ." However, Plaintiff does not allege, and there is no evidence in the record to suggest, that Plaintiff actually suffered any serious negative effects from being without his medications for five days.

The Court concludes that Plaintiff has failed to show there are genuine issues of material fact for trial on his claims against Shelby County. Therefore, Shelby County is entitled to judgment as a matter of law.

For all of the foregoing reasons, Shelby County's motion to dismiss or for summary judgment is GRANTED. Defendant Palmer's motion to dismiss is also GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id. The same considerations that lead the Court to grant the Defendants' motions to dismiss and for summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $455 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See* McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997). McGore sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE